UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES RICHARD GERMALIC,

                                 Plaintiff,          1:10-CV-1317

        v.

THE COMMISSIONERS STATE BOARD OF
ELECTIONS, NEW YORK,

                                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

JAMES RICHARD GERMALIC
Plaintiff, Pro Se
5615 Alber Avenue
Parma, OH 44129

NEW YORK STATE BOARD OF ELECTIONS    PAUL M. COLLINS, ESQ.
OFFICE OF SPECIAL COUNSEL
Attorney for Defendants
40 Steuben Street
Albany, NY 12207-1650

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

      Plaintiff James Richard Germalic ("plaintiff" or "Germalic"), proceeding pro se, brings this action against defendants pursuant to 42 U.S.C. § 1983 alleging violation of his civil rights. Specifically, plaintiff claims that New York election law deprived him of his First and Fourteenth Amendment rights by prohibiting out-of-state persons from collecting signatures to support his independent candidacy for the office of United States Senator

from New York. Plaintiff seeks declaratory relief. Defendants have filed a motion to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, inter alia, that plaintiff lacks standing and his claims are moot. Plaintiff opposes the motion, which was taken on submit.

## II. FACTUAL BACKGROUND

The following facts, taken from the complaint, are accepted as true for purposes of this motion to dismiss.

Between July 6 and August 17, 2010, Germalic gathered approximately 7800 signatures throughout the state of New York to support his petition to get his name on the November 2010 ballot as the "Black/White Party" candidate for the office of United States Senator from New York. Plaintiff mailed his petition and these signatures to the Board of Elections of New York (the "Board") on August 17, 2010. On September 18, 2010, plaintiff received a letter from the Board advising that only 1336 of the signatures would be accepted. Therefore, his petition was deemed "invalid" as 15,000 signatures are required to be included on the ballot as an independent candidate. Complaint, Dkt. No. 1, Ex. A.

Despite numerous requests, plaintiff was never provided with an explanation as to why the vast majority of the signatures were unacceptable. As a result of the Board's determination, Germalic's name did not appear on the November 2010 ballot.

## III. DISCUSSION

### A. Motion to Dismiss—Legal Standard

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Although a complaint need only contain "a short

and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiffs fail to provide some basis for the allegations that support the elements of their claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiffs' favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Additionally, particular deference should be given to a pro se litigant's complaint when applying the above standard. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

### B. Defendants' Motion to Dismiss

Plaintiff challenges the constitutionality of New York's requirement that witnesses to nominating petitions for independent candidates be residents of New York. Plaintiff asserts that this violates his freedom speech as well as the freedom of speech of such witnesses. In his complaint and memorandum of law in opposition to defendants' motion, Germalic also rails against the "privileged position" the two major political parties hold over third party and independent candidates in this country. Although he indicates a desire "to challenge this constitutionally," plaintiff fails to identify what specific laws or practices he is challenging. Nor does he articulate how these particular defendants are implicated in such a vague claim. Therefore, the only cognizable claim in plaintiff's complaint is that concerning New York election law and the residency requirement of witnesses.

### 1. Standing

To establish standing under Article III of the United States Constitution, a plaintiff must demonstrate that: (1) he has suffered an "injury in fact" that is "concrete" instead of "hypothetical"; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992). Germalic has failed to identify any actual injury that he suffered as a result of the residency requirement at issue.

Assuming plaintiff suffered an injury in that his name did not appear on the ballot as a candidate for United States Senate, such is not remotely traceable to New York's requirement that a witness to an independent nominating petition be "a duly qualified voter of the state." See N.Y. ELEC. LAW § 6-140(1)(b). Accepting the factual allegations in plaintiff's complaint as true, he had a total of 7800 signatures to support his petition—well short of the 15,000 signatures required. See id. § 6-142(1). Plaintiff does not allege that he could have secured the remaining 7200 signatures but for the prohibition on out-of-state witnesses. The actual provision that kept plaintiff off the ballot was section 6-142(1)'s 15,000-signature threshold. However, Germalic does not challenge this requirement anywhere in the complaint.[1]

Therefore, plaintiff does not have standing to bring this claim in federal court. Regardless, his constitutional challenge to this particular election law provision would fail even if standing could be established.

---

[1] Nor would such a challenge succeed. See Johnson v. Cuomo, 595 F. Supp. 1126, 1129–30 (N.D.N.Y. 1984) (Foley, S.J.) (holding section 6-142(1)'s then-20,000 signature requirement to be reasonable and constitutional).

### 2. Constitutionality of Section 6-140(1)(b)

The Supreme Court has noted that "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." Bullock v. Carter, 405 U.S. 134, 145, 92 S. Ct. 849, 857 (1972).  Accordingly, "courts have upheld an array of restrictions on ballot access." Person v. N.Y. Bd. of Elections, 467 F.3d 141, 144 (2d Cir. 2006).

The level of judicial scrutiny to be applied to election laws impacting ballot access is determined by the extent to which the law burdens First and Fourteenth Amendment rights. Lerman v. Bd. of Elections of N.Y.C., 232 F.3d 135, 145 (2d Cir. 2000).  The Lerman Court applied strict scrutiny to a similar provision of New York election law, which required witnesses to "designation petitions" be residents of the political subdivision in which the office to be voted on was located. Id. at 149.  The Court found the state's interest of protecting the integrity of the electoral process to be compelling but struck down the provision, holding that requiring witnesses to be residents of a particular geographic political subdivision was not narrowly drawn to advance this interest. Id.  In so holding, the Court noted that "the usual justification for a residence requirement is to ensure that the petition witness be answerable to a subpoena." Id. at 150 (internal quotation marks omitted).  The Court then explained that the state's interest would be served by the "less burdensome" requirement that a witness be a New York resident—instead of the more demanding requirement that a witness reside in a particular subdivision—because defendants enjoyed statewide subpoena power. Id.

Applying the same exacting standard, the residency requirement in section 6-140(1)(b) is narrowly tailored to serve the state's compelling interest of protecting the

integrity of the electoral process and guarding against fraud.  The facts of this case highlight the importance of the state's interest.  Plaintiff is a resident of Ohio who desired to import a group a supporters to gather signatures from New York residents.[2]  While Germalic maintains that he took actions in New York "to keep it legal and above board," not all potential candidates for office may be as law-abiding.  Therefore, it becomes critical to ensure that any witness attesting to the accuracy of signatures on the ballot petition be reachable by subpoena.  The residency requirement in section 6-140(1)(b) accomplishes exactly that.  See Johnson, 595 F. Supp. at 1130 (finding the same residency requirement to be "a reasonable one that helps protect the integrity of the state nominating process with a proper additional safeguard in the signature canvassing").[3]

Moreover, section 6-140(2) provides an alternative means of witnessing the nomination petition.  This provision allows for the signed statement of a notary public "[i]n lieu of the signed statement of a witness who is a duly qualified voter of the state."  N.Y. ELEC. LAW § 6-140(2).  Taken together, sections 6-140(1)(b) and 6-140(2) are narrowly drawn to serve the state's compelling interests and provide a reasonable alternative to ease the burden on plaintiff's First and Fourteenth Amendment rights.

---

[2] Defendants do not take issue with Germalic's residency.  However, it is unclear that plaintiff even qualified to be a United States Senator from New York as it appears that he lived in Ohio at all times relevant to this action.  See U.S. CONST. art. I, § 3, cl. 3 ("No Person shall be a Senator . . . who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.").  Indeed, according to records from the United States District Court of Nebraska, plaintiff resided at the same Ohio address in 2008.  See Dkt. No. 6–3, App. B.

[3] The previous version of section 6-140(1)(b) required attesting witnesses to be residents of the district in which the candidate seeks office.  This provision was found to be unconstitutional for the same reason as the provision in Lerman.  See Chou v. N.Y. Bd. of Elections, 332 F. Supp. 2d 510, 516 (E.D.N.Y. 2004) (holding that the Board's statewide subpoena power, "combined with the requirement[] that witnesses be state residents, . . . already protects the public interest in protecting the integrity of the process").  This district resident requirement was legislatively removed from section 6-140(1)(b) in 2009.  S. 1366, 232d Leg., (N.Y. 2009).

Accordingly, plaintiff has failed to state a claim on which relief can be granted.

## IV. CONCLUSION

Plaintiff fails to establish an actual injury that is traceable to the provision of New York election law at issue. Therefore, he lacks standing to pursue this claim in federal court. Nonetheless, plaintiff's constitutional claim would fail as the witness residency requirement is narrowly drawn to serve the state's compelling interests.

As a result of the above, it is

ORDERED, that

1. Defendants' motion to dismiss is GRANTED; and

2. Plaintiff's complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk is directed to enter judgment accordingly.

_____
United States District Judge

Dated: April 1, 2011
       Utica, New York.